UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA M. K.,

                              Plaintiff,

v.                                                  5:21-cv-451 (BKS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                      OF COUNSEL:
OLINSKY LAW GROUP           HOWARD D. OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION    CHRISTOPHER L. POTTER, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

Angela M. K. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the Commissioner of Social Security's ("Commissioner") denial of her request

for Supplemental Security Income.  (Dkt. No. 1.)  Plaintiff did not consent to the disposition of

this case by a Magistrate Judge.  (Dkt. No. 6.)  Both parties filed briefs, which the Court treats as

motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.

(Dkt. Nos. 4, 18, 21.)  For the reasons set forth below, the undersigned recommends that the

Court deny Plaintiff's motion and affirm the Commissioner's decision.

## I.      BACKGROUND

Plaintiff was born in June of 1979 and earned her GED in 2002.  (T. at 308, 355.[1])  She worked full time as a cashier from 2002 to October of 2007, and as a secretary from October of 2007 to December of 2007.  *See id.*  at 356, 362, 364, 367.  She filed for Supplemental Security Income on July 17, 2014, claiming an onset date of March 12, 2013, and disability due to: (i) anxiety, (ii) depression, (iii) attention-deficit/hyperactivity disorder ("ADHD"), and (iv) bipolar disorder.  *Id.* at 308, 355.

The Commissioner denied Plaintiff's initial application, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 151, 159.  ALJ Elizabeth Koennecke held two hearings and denied Plaintiff's claim on July 20, 2017.  *See id.* at 53-87, 120-35.  The Appeals Council subsequently remanded the case, and assigned it to a new ALJ with instructions to: (i) "[f]urther evaluate [Plaintiff's] mental impairments in accordance with the special technique described in 20 CFR 416.920a," (ii) "[f]urther evaluate [Plaintiff's] alleged symptoms and provide a rationale in accordance with the disability regulations," and (iii) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert."  *Id.* at 140-45.

On remand from the Appeals Council, ALJ Tanya J. Garrian held a hearing on February 18, 2020, and Plaintiff testified along with Vocational Expert ("VE") Martina Henderson.  *Id.* at 31-52.  The ALJ denied Plaintiff's claim on March 4, 2020, and the Appeals Council denied Plaintiff's request for review on February 17, 2021.  *Id.* at 1-3, 10-19.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.     STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Brennan v. Colvin*, No. 13-CV-6338 (AJN) (RLE), 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2] "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson*, 817 F.2d at 985; *see also Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations.").

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Johnson*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  In a similar vein, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022).  "The court, however, will not defer to the Commissioner's determination if it is the product of legal error."  *Hopson v. Comm'r of Soc. Sec.*, No. 20-CV-6528 (LTS) (RWL), 2022 WL 1749930, at *2 (S.D.N.Y. Jan. 12, 2022).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130-31 (2d Cir. 2008), or explain her reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

## III.   DISCUSSION

The ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act because her medically determinable mental impairments (i.e., panic disorder, ADHD, bipolar disorder, mood disorder, anxiety, and depression) were not severe.  (T. at 12-19.)  More specifically, the ALJ concluded Plaintiff's "medically determinable mental impairments cause no more than mild limitation[s] in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities."  *See id.* at 19.

For the following reasons, the undersigned concludes substantial evidence supports the ALJ's step two determination.  (*See* T. at 12-19.)  The undersigned further concludes the ALJ did not err in assigning little weight to treatment notes signed by Toni Usev, N.P., and Jessica Brusgul, L.M.H.C., because those providers were not acceptable medical sources at the time Plaintiff initiated this claim.  *See id.* at 18.  The undersigned accordingly recommends that the Court deny Plaintiff's motion and affirm the Commissioner's decision.

### A.    Legal Standards

#### 1.    Step Two Evaluation

"To determine if a claimant suffers from a qualifying disability under the Social Security Act, the Commissioner follows a five-step, sequential evaluation process." *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see also* 20 C.F.R. § 416.920(a)(4); SSR 86-8, 1986 WL 68636, at *2-4 (Jan. 1, 1986).  The only step at issue here, the second step, requires the Commissioner to consider whether claimant has: (1) a medically determinable impairment or combination of impairments, (2) that is severe, and (3) that has lasted or is expected to last for a continuous period of at least 12 months.  *See* 20 C.F.R. §§ 416.920(a)(4)(ii), (c); 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."); *see generally* SSR 85-28, 1985 WL 56856, at *3-4 (Jan. 1, 1985).  Claimants bear the burden of proving they meet these requirements, and most disputes concern the second requirement—whether the impairment is severe.  *See Sczepanski*, 946 F.3d at 158 ("The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four."); *see, e.g.*, *Dione B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1745 (WBC), 2022 WL 1458594, at *3 (W.D.N.Y. May 9, 2022) (explaining "plaintiff bears the burden

of presenting evidence establishing severity"); *Trevor H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-236 (JMC), 2020 WL 7350769, at *3 (D. Vt. Dec. 15, 2020) (same).

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a); *see also Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) ("A 'severe' impairment is one that significantly limits an individual's physical or mental ability to do basic work activities."). The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including:

> "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting."

20 C.F.R. §§ 416.922(b)(1)-(6); *see also* SSR 85-28, 1985 WL 56856, at *3. The first two categories in this list concern physical functional capacities, and the final four concern mental functional capacities. *See generally* 20 C.F.R. §§ 416.945(b)-(c); 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(E)(1)-(4).

The Second Circuit has consistently held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Accordingly, "a claim may be denied at step two only if the evidence shows that the individual's impairments . . . do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities." *Schafenberg*, 858 F. App'x at 456. "If such a finding is not *clearly established*

*by medical evidence*, however, adjudication must continue through the sequential evaluation process." *Id.* (emphasis in original).

"Step two's *de minimis* standard must be read together with the substantial evidence standard." *Dione B.*, 2022 WL 1458594, at *4; *compare Schafenberg*, 858 F. App'x at 456 (discussing step two's *de minimis* standard), *with* 42 U.S.C. § 405 ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, "[a]n ALJ's step two denial should be affirmed if there is substantial evidence in the record for the conclusion that a plaintiff's impairment is a *de minimis* one." *Dione B.*, 2022 WL 1458594, at *4; *see, e.g.*, *Gwenn A. S. v. Kijakazi*, No. 1:20-CV-1168 (BKS) (DEP), 2022 WL 1129810, at *8 (N.D.N.Y. Feb. 3, 2022), *report and recommendation adopted*, 2022 WL 819199 (N.D.N.Y. Mar. 18, 2022) (concluding substantial evidence supported the ALJ's step two denial); *Trevor H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-236, 2020 WL 7350769, at *4-5 (D. Vt. Dec. 15, 2020) (same); *Reichardt v. Comm'r of Soc. Sec.*, No. 3:14-CV-1304 (GTS) (WBC), 2016 WL 11477505, at *7 (N.D.N.Y. May 16, 2016), *report and recommendation adopted*, 2016 WL 3527811 (N.D.N.Y. June 23, 2016) (same).

### 2.    Special Technique for Evaluating Mental Impairments

When the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the mental impairment at steps two and three, and "at each level in the administrative review process." *See* 20 C.F.R. § 416.920a(a); *see generally Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). "This technique . . . enables administrative

law judges to determine whether medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Linda H. v. Kijakazi*, No. 3:21-CV-121 (DJS), 2022 WL 3682937, at *3 (N.D.N.Y. Aug. 25, 2022).

First, the Commissioner must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments. 20 *See* C.F.R. § 416.920a(b)(1); *see also Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). The claimant's "mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921.

Second, if the Commissioner determines that the claimant has a medically determinable mental impairment, the Commissioner must rate the degree of functional limitation resulting from the impairments and determine their severity. 20 C.F.R. §§ 416.920a(b)(2), (c)-(d); *see also Nedzad O.*, 577 F. Supp. 3d at 44. "This involves the consideration of the degree of limitation present in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself." *Nedzad O.*, 577 F. Supp. 3d at 44; *see also* 20 C.F.R. § 416.920a(c)(3); *see generally* 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(E)(1)-(4). "These four functional areas are measured on a five-point scale that ranges between 'none,' 'mild,' 'moderate,' 'marked,' and 'extreme,' with the last point on the scale representing 'a degree of limitation that is incompatible with the ability to do any gainful activity.' *Nedzad O.*, 577 F. Supp. 3d at 44; *see also* 20 C.F.R. § 416.920a(c)(4). "While a mental impairment rated as 'none' or 'mild' generally will not qualify as 'severe,' those rated as 'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step two, thus requiring the [ALJ] to proceed to the third step in the

sequential process." *Schafenberg*, 858 F. App'x at 456; *see also* 20 C.F.R. §§ 416.920a(c)(4)-(d)(1).

Third, if the ALJ finds that the claimant has a severe impairment, the ALJ must proceed to step three of the sequential evaluation process and determine if the impairment "meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 416.920a(d)(2); *see also Kohler*, 546 F.3d at 266. If the ALJ concludes the claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, [sh]e will then assess [the claimant's] residual functional capacity." 20 C.F.R. § 416.920a(d)(3); *see also Kohler*, 546 F.3d at 266.

The second step of the special technique—evaluating the severity of the mental impairments—requires the ALJ to evaluate "all relevant evidence." 20 C.F.R. § 416.920a(c)(1). This includes: (1) objective medical evidence from an acceptable medical source; (2) all relevant medical evidence about the claimant's disorder; (3) all relevant evidence about the claimant's mental disorder and daily functioning; (4) evidence from school, vocational training, work, and work-related programs; (5) longitudinal medical evidence; and (6) evidence of functioning in unfamiliar situations and supportive situations. 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(C)(1)-(6); *see generally* 20 C.F.R. § 416.920a(c)(2) ("See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.").

The ALJ's decision must document the application of this technique. *See* 20 C.F.R. §§ 416.920a(a)(3), (e); *see also Kohler*, 546 F.3d at 266. It must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R.

§ 416.920a(e)(4).  It must also include specific findings about the degree of limitation (i.e., none, mild, moderate, marked, or extreme) in the four categories of mental functioning.  *See id.*; *see also Kohler*, 546 F.3d at 266.

### B. The ALJ's Step Two Determination

ALJ Garrian concluded Plaintiff was not disabled under the Social Security Act because she did not suffer from a severe mental impairment.  (T. at 12-19.)  She concluded Plaintiff had six medically determinable impairments (i.e., panic disorder, ADHD, bipolar disorder, mood disorder, anxiety, and depression) but no impairment or combination of impairment significantly limited Plaintiff's ability to perform basic work-related activities for 12 consecutive months.  *See id.* at 12.

The ALJ evaluated objective medical evidence, treatment records, medical opinion evidence, and other non-medical evidence like Plaintiff's daily activities, her testimony, and her alleged symptoms.  *See id.* at 13-19.  Based on her review of this evidence, the ALJ made seven central findings.  *See id.*  First, Plaintiff's "mental status examinations during the period at issue were generally within normal limits."  *See id.* at 14, 16.  Second, "a conservative course of treatment of therapy and medication management . . . controlled [Plaintiff's] symptoms."  *Id.* at 14-16.  Third, Plaintiff had "a single hospitalization admission" during the period at issue.  *Id.* at 14.  Fourth, the persuasive medical opinion evidence indicates Plaintiff's mental functional impairments were mild.  *See id.* at 14-18.  Fifth, Plaintiff's "daily activities do not reflect any functional limitation regarding basic work activities."  *See id.* at 15-16.  Sixth, Plaintiff was able to "handle part-time work with no trouble" and "manage her family" responsibilities.  *See id.* at 15-16.  Seventh, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the evidence of record.  *See id.* at 14-19.  Based on

these findings, the ALJ concluded Plaintiff had a mild limitation in her ability to remember or apply information, no limitation interacting with others, a mild limitation concentrating, persisting, or maintaining pace, and no limitation adapting or managing herself. *See id.* at 16. The ALJ accordingly concluded Plaintiff did not have a severe impairment or combination of impairments. *Id.* at 12.

Plaintiff claims the ALJ's step two determination is unsupported by substantial evidence. (Dkt. No. 18 at 15-18.) She does not challenge the seven findings outlined above, and she advances no challenge to the ALJ's legal evaluation of the medical opinions or of her symptoms. *See id.*[3] Rather, she points to moments of increased symptomatology and treatment notes from N.P. Usev and L.M.H.C. Brusgul indicating she was "not able to work" because she was "emotionally disabled in that she can not [sic] tolerate any stressful situations." *See id.*

In response, the Commissioner contends substantial evidence supports the ALJ's step two determination. (Dkt. No. 21 at 2-9.) The Commissioner points to Plaintiff's normal mental status examinations, treatment records showing a reduction in symptomatology due to a conservative course of treatment with medication and therapy, and the medical opinion evidence. *Id.* at 3-5. The Commissioner argues Plaintiff's "brief one-time hospitalization does not show a sustained 12-month limitation as required for relevancy under the Social Security Act." *Id.* at 4.

---

[3] For the reasons explained in section III.D., the three treatment notes from Toni Usev, N.P., and Jessica Brusgul, L.M.H.C., indicating Plaintiff was unable to work do not constitute medical opinions. *See* 20 C.F.R. § 416.902(a)(7) (indicating a "Licensed Advanced Practice Registered Nurse" is only an "Acceptable medical source" for "claims filed . . . on or after March 27, 2017"); 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006) (identifying nurse practitioners and licensed clinical social workers as "Medical sources who are not 'acceptable medical sources.'").

The Commissioner further argues the ALJ properly weighed Plaintiff's moments of increased symptomatology, and properly discounted the three treatment notes from N.P. Usev and L.M.H.C. Brusgul.  *See id.* at 7-8.

### C.    Substantial Evidence Supports the ALJ's Step Two Denial

The ALJ properly applied the special technique for evaluating mental health limitations. (*See* T. at 12-19.)  She addressed all of the relevant evidence, made specific findings about the degree of Plaintiff's limitation in the four categories of mental functioning, and supported those findings with seven key findings concerning Plaintiff's objective medical evidence, treatment records, medical opinion evidence, daily activities, ability to function in a work setting, and symptoms.  *See id.* at 14-18.  Substantial evidence supports each of the ALJ's seven key findings.  *See id.*; *see also Tejada*, 167 F.3d at 773.  Taken together, this substantial evidence adequately supports the ALJ's conclusion that Plaintiff's impairments are *de minimis*.  *See Biestek*, 139 S. Ct. at 1154; *see, e.g.*, *Dione B.*, 2022 WL 1458594, at *4 (concluding substantial evidence supported the ALJ's step two denial); *Gwenn A. S.*, 2022 WL 1129810, at *8 (same); *Trevor H.*, 2020 WL 7350769, at *4-5 (same); *Reichardt*, 2016 WL 11477505, at *7 (same).

### 1.    Normal Mental Status Examinations

First, substantial evidence supports the ALJ's finding that Plaintiff's "mental status examinations during the period at issue were generally within normal limits."  (T. at 14, 16.)  During the relevant period,[4] Plaintiff consistently had normal mental status examinations.  *See id.*

---

[4] The relevant period for Plaintiff's Supplemental Security Income claim runs from July 17, 2014, the date she applied for those benefits, to March 4, 2020, the date of the ALJ's decision.  *See* 20 C.F.R. §§ 416.330, 416.335; *see, e.g.*, *Otero v. Kijakasi*, No. 20-CV-7612 (VEC) (DF), 2022 WL 1051164, at *2 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted*, 2022 WL 951061 (S.D.N.Y. Mar. 30, 2022); *Segarra v. Comm'r of Soc. Sec.*, No. 20-CV-5801 (PGG) (DF), 2022 WL 1051155, at *2 (S.D.N.Y. Feb. 17, 2022), *report and recommendation adopted,* 2022 WL 669877 (S.D.N.Y. Mar. 7, 2022).

at 492, 495, 545, 566, 570, 588, 594, 602, 607-608, 612-13, 617, 622-23, 627-28, 637, 646-47, 658, 665, 669, 673, 677, 684, 688, 692, 698, 703, 707, 709, 711, 714, 716, 718, 720, 724-25, 726, 729, 816, 823, 825, 828-29, 833-34, 840-41, 846-47, 851-53, 858-59, 864-65, 870-71, 880-81, 888-89, 900-901, 910-11, 915-16, 923, 944, 953, 956, 965-66, 969, 972, 980, 983,  990, 993, 1007-1008.  Among other things, these examinations evaluated Plaintiff's psychomotor activity, mood, speech, thought content and process, perception, intelligence, memory, insight, judgment, and danger to self and others.  *See generally id.*  These examinations are objective medical evidence because they relied on observations of "[p]sychiatric signs" and used "psychological tests" to make findings about Plaintiff's mental status.  *See* 20 C.F.R. § 416.902(k) ("Objective medical evidence means signs, laboratory findings, or both."); 20 C.F.R. § 416.902(g) ("Laboratory findings means one or more . . . psychological phenomenal that can be shown by the use of a medically acceptable laboratory diagnostic technique," including "psychological tests."); 20 C.F.R. § 416.902(l) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception and must also be shown by observable facts that can be medically described and evaluated."); *see also* 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(C)(2)(c)-(d); *accord Rocco F. v. Comm'r of Soc. Sec.*, No. 6:21-CV-0015 (DJS), 2022 WL 1597765, at *7 (N.D.N.Y. May 19, 2022) (treating mental status examinations as objective medical evidence); *Lori P. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00193 (CR), 2021 WL 1207456, at *6 (D. Vt. Mar. 31, 2021) (same); *Hino v. Comm'r of Soc. Sec.*, No. 17-CV-1060S (WMS), 2019 WL 2635741, at *7 (W.D.N.Y. June 27, 2019) (same).  Substantial objective medical evidence accordingly supports the ALJ's finding that Plaintiff's "mental status examinations during the period at issue were generally within normal limits."  (T. at 14, 16.)

13

## 2.   Symptoms Controlled by Treatment

Second, substantial evidence supports the ALJ's finding that "a conservative course of treatment of therapy and medication management . . . controlled [Plaintiff's] symptoms." *Id.* at 14-16.  Plaintiff's healthcare providers diagnosed her with bipolar disorder, depression, anxiety, ADHD, and panic disorder with agoraphobia. *See id.* at 488, 492, 597, 608, 628, 707, 711, 724, 728, 816, 830, 836, 842, 848, 944, 949, 953, 980; *see generally Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (explaining "mere diagnosis . . . without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.").  Plaintiff's healthcare providers treated these impairments with medication and therapy.  (*See generally* T. at 470-542, 547-795, 807-10, 814-1009.)  Treatment records from the relevant time period indicate Plaintiff's medications successfully controlled her symptoms. *See id.* at 486, 488, 492, 495, 565, 569, 575, 585, 591, 599, 614, 634, 656, 663, 667, 671, 675, 682, 690, 707, 709, 711, 713, 716, 718, 720, 722, 832, 845, 851, 858, 968, 971, 982, 989, 992.  These periods of controlled symptomatology dominate over some fleeting episodes of increased symptomatology—periods where, for the most part, Plaintiff expressed satisfaction with her treatment. *Compare id. with id.* at 612, 696, 724, 728, 839, 845, 852, 869, 879, 955, 971, 979, 1007; *but see* Dkt. No 18 at 15-18 (arguing these fleeting episodes of increased symptomatology "support[] the inference that Plaintiff has met her burden of proof in establishing the severity of her impairments at Step Two.").  These treatment records constitute medical evidence because they document the treatment Plaintiff was prescribed, and the response. *See* 20 C.F.R. § 416.913(a)(3); *see also* 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(C)(2)(a), (f)-(i).  Substantial medical evidence accordingly supports the ALJ's finding that "a conservative course of treatment of therapy and medication management . . . controlled [Plaintiff's] symptoms."  (T. at 14-16.)

14

### 3.      Longitudinal Record Reveals One Hospitalization

Third, substantial evidence supports the ALJ's finding that Plaintiff experienced only one hospitalization during the relevant time period.  *See id.* at 14.  Plaintiff's treatment records from the relevant period, which spanned nearly six years, indicate she had one short-term hospitalization and was discharged in stable condition.  *Compare id.* at 929-40 (documenting Plaintiff's hospital stay in September of 2018), *with id.* at 470-542, 547-795, 807-10, 814-928, 941-1009 (documenting years of treatment without hospitalization); *accord* Dkt. No. 18 at 4-14. These treatment records constitute medical evidence because they document Plaintiff's "medical history."  *See* 20 C.F.R. § 416.913(a)(3); *see also* 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(C)(2)(b).  Substantial medical evidence accordingly supports the ALJ's finding that Plaintiff experienced only one hospitalization in the nearly six-year period of interest.  (*See* T. at 14.)

### 4.      Persuasive Medical Opinions Indicate Mild Limitations

Fourth, substantial medical opinion evidence supports the ALJ's finding that Plaintiff's mental functional impairments were mild.  *See id.* at 14-18.  Four acceptable medical sources issued medical opinions during the relevant time period: consultative examiner Dennis M. Noia, Ph.D., state agency medical consultant J. Juriga, Ph.D., Plaintiff's examining physician Bentley Strockbine, M.D., and Plaintiff's examining physician Omar A. Colon, M.D.  *See id.* at 112-14 (Dr. Juriga's opinion, dated Nov. 7, 2014), 543-46 (Dr. Noia's opinion, dated Oct. 28, 2014), 796-98 (Dr. Strockbine's opinion, dated Nov. 29, 2016), 1010-12 (Dr. Colon's opinion, dated Jan. 22, 2020); *see generally* 20 C.F.R. § 416.927(a)(1) (defining "Medical opinions"); 20 C.F.R.

§§ Pt. 404, subpt. P, App'x 1, 12.00(C)(1)-(2).[5]  Dr. Juriga opined Plaintiff's impairments were

not severe, concluding she had no limitations in her ability to maintain social functioning, no

repeated episodes of decompensation, mild restrictions in her activities of daily living, and only

mild difficulties maintaining concentration, persistence, and pace.  (T. at 112-13.)  The ALJ gave

Dr. Juriga's opinion significant weight.  *See id.* at 17.

　　Dr. Noia opined Plaintiff's mental limitations ranged in severity from no limitations to

moderate limitations.  *See id.* at 543-46.  The ALJ credited the aspects of Dr. Noia's opinion

indicating Plaintiff had no or mild limitations, but discredited the aspect of Dr. Noia's opinion

indicating Plaintiff had moderate limitations in her ability to interact with others.  *See id.* at 16-

17; *see generally Gutierrez v. Comm'r of Soc. Sec.*, No. 20-CV-10233 (KHP), 2022 WL

2116718, at *11 (S.D.N.Y. June 13, 2022) ("In weighing medical evidence, the ALJ may choose

portions of an opinion he finds persuasive and reject those that are not.").

　　Using a different rating scale than that used under the regulations, Dr. Strockbine opined

Plaintiff's mental functioning was unlimited in fourteen categories, "[l]imited but satisfactory" in

six categories,[6] and "[s]eriously limited, but not precluded" in one category—Plaintiff's ability to

"[t]ravel in [an] unfamiliar place."  (T. at 797; *see generally* 20 C.F.R. § 416.920a(c)(4) ("When

we rate your degree of limitation . . . we will use the following five-point scale: None, mild,

moderate, marked, and extreme.").)  Although Dr. Strockbine concluded Plaintiff's capacity to

---

[5] Toni Usev, N.P., and Jessica Brusgul, L.M.H.C., are not acceptable medical sources in this
case, which was initiated before March 27, 2017.  *See supra*, note 3; *see also infra* section III.D.

[6] Dr. Strockbine concluded Plaintiff's mental functioning was "[l]imited but satisfactory" in the
following categories: (i) "[m]aintain attention for two hour segment," (ii) "[c]omplete a normal
workday and workweek without interruptions from psychologically based symptoms," (iii)
"[p]erform at a consistent pace without an unreasonable number and length of rest periods," (iv)
"[d]eal with normal work stress," (v) "[b]e aware of normal hazards and take appropriate
precautions," and (vi) "[u]se public transportation."  (T. at 797.)

maintain attention, complete a normal workweek, and perform at a consistent pace was "[l]imited but satisfactory," he concluded Plaintiff had "deficiencies of concentration, persistence, or pace" that would cause her to be off-task ten percent of each eight-hour workday. (*See* T. at 797-98.)  The ALJ discounted this aspect of Dr. Strockbrine's opinion, concluding it was "inconsistent with the record."  *See id.* at 17.  However, the ALJ credited Dr. Strockbrine's opinion that Plaintiff had "little functional limitation" in most categories of mental functioning. *See id.*

The ALJ gave Dr. Colon's opinion similar treatment.  *See id.* at 18.  Like Dr. Strockbrine, Dr. Colon used a different rating scale than that used under the regulations.  (*Compare id.* at 1011, *with* 20 C.F.R. § 416.920a(c)(4).)  Dr. Colon similarly opined Plaintiff's mental functioning was unlimited in twelve categories, and "[l]imited but satisfactory" in eight categories.  (T. at 1011.[7])  Dr. Colon also opined Plaintiff had "deficiencies of concentration, persistence, or pace" that would cause her to be off-task ten percent of each eight-hour workday. *See id.* at 1012.  He further concluded Plaintiff's impairments would cause her to miss work "[a]bout two days per month."  *Id.*  The ALJ credited the aspects of Dr. Colon's opinion that "reflect[] little functional limitation," but discounted the aspects of his opinion concluding Plaintiff had more significant functional limitations.  *See id.* at 18.  The ALJ discounted these conclusions because they were "not consistent with [Plaintiff's] ability to keep up with a

---

[7] Dr. Colon concluded Plaintiff's mental functioning was "[l]imited but satisfactory" in the following categories: (i) "[r]emember work-like procedures" (ii) "[m]aintain attention for two hour segment," (iii) "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," (iv) "[p]erform at a consistent pace without an unreasonable number and length of rest periods," (v) "[a]ccept instructions and respond appropriately to criticism from supervisors," (vi) "[d]eal with normal work stress," (vii) "[t]ravel in unfamiliar place," and (viii) "[u]se public transportation."  (T. at 1011.)

significantly demanding schedule;" they were "inconsistent with the . . . longitudinal evidence of record;" and Dr. Colon provided "no explanation" for his opinion. *See id.*

In sum, the ALJ credited Dr. Juriga's opinion and the aspects of the opinions from Drs. Noia, Strockbrine, and Colon indicating Plaintiff's impairments caused no significant mental limitations. *See id.* at 16-18.  The ALJ discounted opinions from Drs. Noia, Strockbrine, and Colon that Plaintiff's mental limitations were moderate or more severe. *See id.*  Plaintiff does not challenge the ALJ's evaluation of these opinions, and the undersigned observes no legal or evidentiary errors in the ALJ's evaluation of the medical opinion evidence. (*See* Dkt. No. 18.) Accordingly, the persuasive medical opinion evidence adequately supports the ALJ's finding that Plaintiff's mental functional impairments were mild.  (T. at 14-18; *see also Biestek*, 139 S. Ct. at 1154.)

### 5.    Daily Activities Inconsistent with Significant Limitations

Fifth, substantial evidence supports the ALJ's finding that Plaintiff's "daily activities do not reflect any functional limitation regarding basic work activities."  (T. at 15-16; *see generally* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(C)(3).)  Through her Function Report, Plaintiff indicated that she could clean her house, do laundry, feed and take care of her kids, care for herself, groom herself, manage her medications, prepare simple meals, shop, pay bills, count change, handle a savings account, and go walking outside.  *See id.* at 374-77.  During her examination with Dr. Noia, Plaintiff "report[ed] that she [wa]s able to dress, bathe, and groom herself . . . cook and prepare food, do general cleaning, laundry, shopping, manage money, [but] d[id] not drive, and d[id] not use public transportation."  *Id.* at 545; *accord id.* at 112 (Dr. Juriga's report of Plaintiff's daily activities).  At the hearing on February 18, 2020, Plaintiff testified that she awakens daily at 5:00 a.m., makes coffee, wakes her son, prepares him for

school, wakes her daughters, prepares them for school, walks them to school, walks home, cleans

the house, does laundry, walks to work, walks home, makes dinner, does dishes, cleans up, and

prepares her children for bed. *See id.* at 41. She further testified that she can "shower, and bathe

. . . and everything." *Id.* at 45. These self-reported daily activities are not consistent with a

finding that Plaintiff has moderate, marked, or extreme mental limitations. *See* 20 C.F.R. § Pt.

404, subpt. P, App'x 1, 12.00(F)(2) (defining no limitation, mild limitation, moderate limitation,

marked limitation, and extreme limitation). Substantial evidence accordingly supports the ALJ's

finding that Plaintiff's "daily activities do not reflect any functional limitation regarding basic

work activities." (T. at 15-16.)

### 6. Part-Time Work and Demanding Schedule Inconsistent with Significant Limitations

Sixth, substantial evidence supports the ALJ's finding that Plaintiff was able to "handle

part-time work with no trouble" and "manage her family" responsibilities. (T. at 15-16; *see*

*generally* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(C)(4)(b).) At the hearing on February

18, 2020, Plaintiff testified that she works part-time as a cashier. (*See* T. at 37.) According to

Plaintiff, she works "15 to 20" hours a week, and has not had any difficulty with the job. *See id.*

at 37, 48. Additionally, as explained above, Plaintiff testified she was able maintain a busy daily

routine. *See id.* at 41. The undersigned is mindful that Plaintiff's ability to persevere through

impairments to care for her children, participate in family life, and help put food on the table

does not—viewed in isolation—prove she is not disabled. *See generally Colgan v. Kijakazi*, 22

F.4th 353, 363 (2d Cir. 2022) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). Here,

however, substantial medical and non-medical evidence indicates Plaintiff's impairments were

not severe. Coupled with this substantial evidence, Plaintiff's ability to work "15 to 20" hours a

week without difficulty and maintain a busy schedule is not consistent with a finding that she has

moderate, marked, or extreme mental limitations.  *See* 20 C.F.R. § Pt. 404, subpt. P, App'x 1, 12.00(F)(2).

### 7.   Statements about Intensity, Persistence, and Limiting Effects of Symptoms Inconsistent with Record

Finally, substantial evidence supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not consistent with the evidence of record.  (T. at 14-19.)  To evaluate the extent to which a claimant's symptoms limit her capacity to work, the ALJ must consider medical opinion evidence,[8] objective medical evidence,[9] other medical evidence,[10] and non-medical evidence,[11] including the categories of evidence defined in the factors set forth under 20 C.F.R. §§ 416.929(c)(3)(i) through (3)(vii).  *See* 20 C.F.R. § 416.929(c); SSR 16-3P, 2017 WL 5180304, at *3-8 (Oct. 25, 2017). The ALJ considered this evidence, and found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the relevant evidence. (*See* T. at 12-19; *see generally* 20 C.F.R. § 416.929(c)(4); SSR 16-3P, 2017 WL 5180304, at *9-10.)  Substantial evidence supports this finding.

For example, the ALJ considered objective medical evidence when she weighed Plaintiff's mental status examinations.  (*See* T. at 14, 16.)  She found those examinations "were generally within normal limits."  *See id.*  Substantial evidence supports this finding.  *See id.* at

---

[8] *See* 20 C.F.R. § 416.927(a)(1)(defining "Medical opinions").

[9] "Objective medical evidence means signs, laboratory findings, or both."  20 C.F.R. § 416.902(k); *see also id.* at § 416.902(g) (defining laboratory findings); *id.* at § 416.902(l) (defining signs); *see generally* SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017) (discussing the consideration of objective medical evidence).

[10] *See* 20 C.F.R. § 416.913(a)(3) (defining "Other medical evidence"); *see generally* SSR 16-3P, 2017 WL 5180304, at *6-7 (discussing the consideration of other medical evidence).

[11] *See* 20 C.F.R. § 416.913(a)(4) (defining "Evidence from nonmedical sources"); *see generally* SSR 16-3P, 2017 WL 5180304, at *7 (discussing the consideration of nonmedical evidence).

492, 495, 545, 566, 570, 588, 594, 602, 607-608, 612-13, 617, 622-23, 627-28, 637, 646-47, 658, 665, 669, 673, 677, 684, 688, 692, 698, 703, 707, 709, 711, 714, 716, 718, 720, 724-25, 726, 729, 816, 823, 825, 828-29, 833-34, 840-41, 846-47, 851-53, 858-59, 864-65, 870-71, 880-81, 888-89, 900-901, 910-11, 915-16, 923, 944, 953, 956, 965-66, 969, 972, 980, 983,  990, 993, 1007-1008.

The ALJ considered other medical evidence when she considered Plaintiff's treatment records.  (T. at 14-16.)  She found Plaintiff was hospitalized once in the nearly six-year record, and "a conservative course of treatment of therapy and medication management . . . controlled [Plaintiff's] symptoms."  *Id.* at 14-16.  Substantial evidence supports these findings.  *See id.* at 486, 488, 492, 495, 565, 569, 575, 585, 591, 599, 614, 634, 656, 663, 667, 671, 675, 682, 690, 707, 709, 711, 713, 716, 718, 720, 722, 832, 845, 851, 858, 968, 971, 982, 989, 992 (documenting Plaintiff's controlled symptomatology); *compare id.* at 929-40 (documenting Plaintiff's hospital stay in September of 2018), *with id.* at 470-542, 547-795, 807-10, 814-928, 941-1009 (documenting years of treatment without hospitalization).

The ALJ considered the medical opinion evidence, assigning persuasive value to Dr. Juriga's opinion and crediting aspects of the opinions from Drs. Noia, Strockbrine, and Colon indicating Plaintiff's impairments caused no significant mental limitations.  (*See* T. at 16-18.) She found the persuasive medical opinion evidence indicated Plaintiff's mental functional impairments were mild.  *See id.* at 14-18.  Substantial evidence supports this finding.  *See id.* at 112-14, 543-46, 796-98, 1010-12.

The ALJ considered non-medical evidence, like Plaintiff's testimony about her daily activities, her daily schedule, and her part-time job.  *See id.* at 15-16.  The ALJ found Plaintiff's "daily activities do not reflect any functional limitation regarding basic work activities," and

Plaintiff was able to "handle part-time work with no trouble" and "manage her family" responsibilities. *Id.* Substantial evidence supports these findings. *See id.* at 37, 41, 45, 48, 112, 374-77, 545.

In short, the ALJ followed the special technique for evaluating mental impairments. (*See* T. at 12-19; *see also* 20 C.F.R. § 416.920a; *see generally Kohler*, 546 F.3d at 266.) She evaluated "all relevant evidence," 20 C.F.R. § 416.920a(c)(1), including objective medical evidence (i.e., Plaintiff's mental status examinations), medical evidence (i.e., Plaintiff's longitudinal treatment records), medical opinion evidence (i.e., the medical opinions of Drs. Noia, Juriga, Strockbine, and Colon), and nonmedical evidence (i.e., daily activities, work schedule, and symptoms). *See* 20 C.F.R. §§ Pt. 404, subpt. P, App'x 1, 12.00(C)(1)-(6). The ALJ documented her application of the special technique by discussing all of the evidence "and the functional limitations that were considered." *See* 20 C.F.R. §§ 416.920a(a)(3), (e)(4); *see also Kohler*, 546 F.3d at 266. Based on her review of the relevant evidence, she made seven key findings—each supported by substantial evidence. (*See* T. at 12-19.) She then made specific findings about the degree of limitation in each of the four categories of mental functioning— concluding Plaintiff had "no limitation" in two functional categories and "mild limitation[s]" in two categories. (*See* T. at 16; *see also* 20 C.F.R. § 416.920a(e)(4); *Kohler*, 546 F.3d at 266.) The ALJ supported these conclusions with the seven key findings from her decision. (*See* T. at 14-18.)

These seven key findings lend substantial support to the ALJ's conclusion that Plaintiff's impairments are *de minimis*. *See, e.g.*, *Dione B.*, 2022 WL 1458594, at *4 (concluding substantial evidence supported the ALJ's step two denial); *Gwenn A. S.*, 2022 WL 1129810, at *8 (same); *Trevor H.*, 2020 WL 7350769, at *4-5 (same); *Reichardt*, 2016 WL 11477505, at *7

(same).  A reasonable mind would accept the substantial evidence supporting these findings as adequate to support the conclusion that Plaintiff's impairments were not severe.  *See Biestek*, 139 S. Ct. at 1154.  The undersigned accordingly recommends that the Court affirm the ALJ's decision.

### D.      Treatment Notes from N.P. Usev and L.M.H.C. Brusgul

In two treatment notes completed by N.P. Usev, one dated July 22, 2019, and the other dated September 24, 2019, N.P. Usev opined Plaintiff was "not able to work" because she was "still emotionally disabled in that she can not tolerate any stressful situations."  (T. at 847, 854.) One treatment note from L.M.H.C. Brusgul, dated November 14, 2019, offered the same opinion.  *See id.* at 841.  Plaintiff claims the ALJ erred in failing to consider "consider the[se] opinions."  (Dkt. No. 18 at 18.)  The undersigned disagrees.

N.P. Usev and L.M.H.C. Brusgul cannot offer medical opinions in this case because they are not acceptable medical sources.  *See* 20 C.F.R. § 416.902(a)(7); 20 C.F.R. § 416.927(a)(1); SSR 06-03P, 2006 WL 2329939, at *2.  Plaintiff initiated her claim for Supplemental Security Income on July 17, 2014.  (*See* T. at 308.)  Because she filed her claim before March 27, 2017, the definition of "Medical opinions" set forth in 20 C.F.R. § 416.927(a)(1) governs her claim. *See* 20 C.F.R. § 416.927 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").  That provision defines medical opinions as "statements from *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1) (emphasis added).  What constitutes an "acceptable medical source," in turn, is defined by 20 C.F.R. § 416.902(a).  *See* 20 C.F.R. § 416.902(a); *see also* SSR 06-03P, 2006 WL 2329939, at *2 (discussing acceptable medical

sources and medical sources who are not acceptable medical sources).  That provision does not include a licensed mental health counselor ("L.M.H.C.") as an acceptable medical source, so any opinion from L.M.H.C. Brusgul in this case does constitute a medical opinion under the regulations.  *See* 20 C.F.R. § 416.902(a); *see also* SSR 06-03P, 2006 WL 2329939, at *2 (identifying therapists as "Medical sources who are not 'acceptable medical sources'").  Furthermore, subsection 416.902(a)(7) indicates that a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title" is only an acceptable medical source for claims "filed . . . on or after March 27, 2017."  20 C.F.R. § 416.902(a)(7); *see also* SSR 06-03P, 2006 WL 2329939, at *2 (identifying nurse practitioners as "Medical sources who are not 'acceptable medical sources'").  Because Plaintiff filed her claim after March 27, 2017, N.P. Usev is not an acceptable medical source in this case.  *See* 20 C.F.R. § 416.902(a)(7).

N.P. Usev and L.M.H.C. Brusgul cannot offer medical opinions because they are not acceptable medical sources.  *See* 20 C.F.R. § 416.902(a)(7); 20 C.F.R. § 416.927(a)(1). The ALJ accordingly did not err in discounting their opinions.  *See Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) ("The ALJ properly discounted Ogula's July 2014 medical source opinion because she was a nurse practitioner and thus was not an acceptable medical source when Cherry filed his claim."); *Gove v. Saul*, No. 19-CV-6839 (JPO), 2020 WL 6712201, at *4 (S.D.N.Y. Nov. 16, 2020) (concluding "the ALJ was not required to give any weight to the opinions of Steven Phillips, a licensed mental health counselor who does not qualify as an 'acceptable medical source' under Social Security regulations.").

Moreover, even if these providers were acceptable medical sources, the ultimate determination of disability is the ALJ's function.  *See* 20 C.F.R. § 416.927(d)(1); *see also Gladden v. Comm'r of Soc. Sec.*, 337 F. App'x 136, 138 (2d Cir. 2009) ("Federal regulations

make clear that whether a physician believes an applicant is 'disabled' is irrelevant, since this determination is reserved to the Commissioner.").

## IV.    CONCLUSION

For the foregoing reasons, the undersigned concludes the ALJ's decision was based on the correct legal standards and substantial evidence supports her decision.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that the ALJ's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:         September 12, 2022
                   Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

25